UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

JAMES BROWN, GIOVANNI CRUZ, and JUAN
SOLIS, individually and on behalf of others
similarly situated,

                    Plaintiffs,

-against-

TOMCAT ELECTRICAL SECURITY, INC.,
INTERNATIONAL BUSINESS MACHINES
CORPORATION, PETER PATERNO, MICHAEL
JERIMILLO, "JOHN DOES," name fictitious,
actual name and number of such persons being
unknown, and "XYZ CORPORATIONS," name
fictitious, actual name and number of such
corporations being unknown,

                    Defendants.

----------------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 03-CV-5175 (FB) (JO)

*Appearances:*
*For Plaintiffs:*
EDWARD G. BAILEY, ESQ.
Bailey & Sherman, P.C.
42-21 Douglaston Parkway
Douglaston, NY 11363

*For Defendants Tomcat Electrical Security, Inc.,*
*Peter Paterno, and Michael Jerimillo:*
BRADFORD D. CONOVER, ESQ.
Conover Law Offices
75 Rockefeller Plaza, 20th Floor
New York, NY 10019

**BLOCK, Senior District Judge:**

       Plaintiffs James Brown ("Brown"), Giovanni Cruz ("Cruz") and Juan Solis

("Solis"), sue Tomcat Electrical Security, Inc. ("Tomcat"), International Business

Machines Corporation ("IBM"), Peter Paterno ("Paterno"), Michael Jaramillo ("Jaramillo"),[1]

---

[1] Plaintiffs' complaint incorrectly refers to defendant as "Michael Jerimillo"; the
parties agree that "Jaramillo" is the correct spelling.

John Does and XYZ Corporations.[2]  Proceeding under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA") and the New York Labor Law, plaintiffs claim that they were not paid the proper amount of overtime while working for Tomcat, a subcontractor of IBM, on various construction projects.  Proceeding under FLSA, the New York Labor Law and state contract law, they further claim that they were not paid prevailing wages for hours worked on certain projects.  By stipulation and order dated March 1, 2004, the claims against IBM were dismissed.  *See* Docket Entry # 14 (Stipulation and Order).[3]

The remaining named defendants – Tomcat and its co-owners (individual defendants Paterno and Jaramillo) – move for summary judgment pursuant to Federal Rule of Civil Procedure 56.  In addition, they also move for an award of excess costs, expenses and attorneys' fees pursuant to 28 U.S.C. § 1927.  For the reasons stated below, the motion for summary judgment is granted in part and denied in part; the § 1927 motion is denied.

---

[2]Since, even after discovery, plaintiffs have failed to substitute named defendants for the John Does and XYZ Corporations, the claims against those defendants are dismissed.  *See, e.g., Atlantic Used Auto Parts v. City of Philadelphia*, 957 F. Supp. 622, 625 (E.D. Pa. 1997) (holding that although "fictitious party names may be used at least until reasonable discovery permits the actual defendants to assume their places . . . fictitious names must eventually be dismissed[ ] if discovery yields no identities." (internal quotation marks and citations omitted)).

[3]Plaintiffs have withdrawn a state law claim against unknown bonding entities and their federal claim against defendants for unpaid contributions to the Social Security Administration, *see* Pl.'s Mem. of Law in Opp'n at 11 n.6; moreover, they have requested that claims against the individual defendants – for negligent handling of wage payments and inducement of breach of contract to pay prevailing wages – "be deemed as ones seeking to assert FLSA liability against [them] as 'employers' under the Act." Pl.'s Mem. of Law in Opp'n at 11-12.

# I.

## A. General Factual Background

The following undisputed general facts are taken from the parties' Rule 56.1 Statements and other submissions.

All three plaintiffs were employed by Tomcat, a corporation that provided electrical, data and fiber optic services. Brown began his employment in December 1999, Solis in August 2000 and Cruz in February 2001; they all worked for Tomcat through March 31, 2003.

From January 2000 through March 2003, various commercial entities retained Tomcat to perform what the Court will refer to as "commercial jobs." From March 2000 through March 2003, Tomcat was also retained through a series of purchase orders by TKM Communications, Inc. ("TKM"), a general contractor hired by IBM to perform work in New York City schools pursuant to a contract IBM had obtained with New York City; the Court will refer to work on these purchase orders as "school jobs."

Plaintiffs did not have employment contracts with Tomcat. They worked at various jobs, at various shifts, for various hours per day and at various hourly wage rates, often on both commercial and school jobs during the same week. *See, e.g.*, Solis Dep. at 63 ("It was all nighttime work at the schools. We had daytime work too."). For commercial jobs, Tomcat paid its employees according to agreed hourly wage rates, which, for plaintiffs, ranged from $11 to $15 per hour over the relevant time period. For school jobs, Tomcat paid its employees hourly wages in accordance with the prevailing wage rates for

electricians issued by the New York City Office of the Comptroller ("Comptroller"): Through May 9, 2002, these wages, excluding benefits, ranged from approximately $37 to $55 per hour depending on the shift; thereafter, through June 30, 2003, they ranged from approximately $39 to $68 per hour. Under the terms of the contract between IBM and New York City, prevailing wages were to be paid to all workers employed on school projects.

From March 2000 through March 2003, Tomcat paid each plaintiff based on the number of hours that Paterno, Jaramillo or a job foreman recorded that he worked each day; that information was submitted to PayChex, a company that handled Tomcat's payroll. PayChex documented each plaintiff's hours and rates on a weekly basis; for those weeks in which a plaintiff worked at more than one job, PayChex listed the hours and rates for each job in separate entries but did not calculate a weekly total of hours worked for purposes of overtime compensation. From December 2002 through March 2003, Tomcat also used daily sign-out logs to document the number of hours plaintiffs worked on school jobs.

## B. General Legal Background

### 1. Overtime

"FLSA and New York state labor laws entitle employees to time-and-a-half overtime for hours worked in excess of forty hours per week." *Noble v. 93 Univ. Place Corp.*, 303 F. Supp. 2d 365, 376 (S.D.N.Y. 2003) (citing 29 U.S.C. § 207(a)(1) and N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2). "[A] corporate officer with operational control who is directly responsible for a failure to pay statutorily required wages is an 'employer' along with

the corporation, jointly and severally liable for the shortfall." *Leddy v. Standard Drywall, Inc.*, 875 F.2d 383, 387 (2d Cir. 1989) (FLSA); *see also Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 192-93 (S.D.N.Y. 2003) (FLSA and New York law).

Both federal and state law require that overtime be based on the employee's "regular rate." 29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2. "[T]he rule for determining the regular rate of pay is to divide the wages actually paid by the hours actually worked in any workweek and adjudge additional payment to each individual on that basis for time in excess of forty hours worked for a single employer." *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 459-60 (1948). Thus, an employer's "regular rate" is "the hourly rate *actually paid* the employee for the normal, non-overtime workweek for which he is employed." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945) (emphasis added). For example, an employee who was paid $1,000 for 50 hours' work, without any premium for overtime, would have a "regular rate of pay" of $20 an hour ($1,000 ÷ 50 hours); the employee would then be entitled to $100 ($20 x 0.5 x 10 hours) for overtime.

Both FLSA and the New York Labor Law provide enhanced damages for willful underpayment of overtime, but differ as to the amount of the enhancement. A willful violation of FLSA's overtime provision entitles the employee to double damages. *See* 29 U.S.C. § 216(b) ("Any employer who violates the [overtime] provisions . . . of this title shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages.").

Under New York law, by contrast, damages for willful violations are increased by only 25%. *See* N.Y. Lab. Law § 663(1) ("If any employee is paid by his employer less than the wage to which he is entitled under the provisions of this article, he may recover . . . if such underpayment was willful, an additional amount as liquidated damages equal to twenty-five percent of the total of such underpayments found to be due him . . . .").

## 2. *Prevailing Wages*

While FLSA establishes minimum wages, it "does not address liability for underpayment of hours at prevailing wage rates." *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 87 (2d Cir. 2003) (citing 29 U.S.C. § 206(a)(1)). Like FLSA, the New York Labor Law requires payment of minimum wages, *see* N.Y. Lab. Law § 652(1), but unlike FLSA, it further provides that any person employed to perform work on a contract with the state or a municipal entity must be compensated for that work at a higher rate "not less than the prevailing rate of wages" as defined by the state or municipal fiscal officer. *See id.* § 220. In New York City, the Comptroller acts as the municipal fiscal officer and, in that capacity, establishes the schedule of prevailing wages. *See* Conover Decl., Ex. W (Labor Law § 220 Prevailing Wage Schedule). In other words, entitlement to prevailing wages is solely a creature of state law.

In addition to creating a right to prevailing wages, New York Labor Law § 220 ("§ 220") sets forth a specific process for vindication of that right: First, the employee must file a complaint with the fiscal officer, who then conducts an investigation; within six months of the date of filing, the fiscal officer must issue an order directing any payment

due on the employee's claim. *See* N.Y. Lab. Law § 220(7). Primary enforcement of § 220 is the responsibility of the fiscal officer; therefore, there can be no judicial review until the fiscal officer acts. *See P & T Iron Works v. Talisman Contracting Co., Inc.*, 795 N.Y.S.2d 306, 307 (2d Dep't 2005) ("[A]s the statute makes clear, the determination of a prevailing wage claim is, in the first instance, the exclusive province of the fiscal officer and must be initially subjected to an administrative proceeding.").

Upon the entry of the fiscal officer's order, the aggrieved party – whether employee or employer – may, within 30 days, institute a proceeding under Article 78 of the New York Civil Practice Law and Rules ("Article 78 proceeding") in the Appellate Division of the Supreme Court. *See* N.Y. Lab. Law § 220(8). Once an order in favor of an employee becomes final (i.e., the order is affirmed by the Appellate Division or the time for instituting an Article 78 proceeding lapses), it may be enforced like any other money judgment, *see id.*; if, by contrast, the process does not result in an order in favor of the employee, then the prevailing wage claim is at an end. *See Marren v. Ludlam*, 790 N.Y.S.2d 146, 148 (2d Dep't 2005) ("[N]o private right of action . . . exists under Labor Law § 220 until an administrative determination in the employee's favor has been made and has gone unreviewed or has been affirmed.").

New York law vests jurisdiction over Article 78 proceedings solely in the state courts, *see* N.Y. C.P.L.R. § 7804(b) ("A proceeding under this article shall be brought in the supreme court in the county specified [by statute]."), and district courts sitting in New York have refused to impinge upon that exclusive jurisdiction, either holding that they lack

supplemental jurisdiction, *see Blatch v. Hernandez*, 360 F. Supp. 2d 595, 637 (S.D.N.Y. 2005) ("This [Article 78] claim must be dismissed for lack of subject matter jurisdiction, as New York State has not empowered the federal courts to consider such claims"); *Cartagena v. City of New York*, 257 F. Supp. 2d 708, 710 (S.D.N.Y. 2003) ("State law does not permit Article 78 proceedings to be brought in federal court, and hence I conclude that I do not have the power to exercise supplemental jurisdiction over [plaintiff's] Article 78 claims.") or declining, in their discretion, to exercise it. *See Camacho v. Brandon*, 56 F. Supp. 2d 370, 380 (S.D.N.Y. 1999) ("Our jurisdiction over pendent state claims is purely discretionary under 28 U.S.C. § 1367, and we see no reason to exercise that discretion by adjudicating a purely state procedural remedy.").

## C. The Parties' Contentions

Plaintiffs claim that until January 2002, the vast majority of the work they performed for Tomcat was on school jobs, but that they were paid for that work at the lower hourly rates for commercial jobs. They further argue that during the same period, Tomcat failed to pay them for all hours worked.

Plaintiffs concede that, beginning in January 2002, Tomcat began paying them the appropriate hourly rates for school jobs. They argue, however, that Tomcat continued to "shave" the number of hours worked at school jobs. In addition, they claim that Tomcat failed to add each plaintiff's weekly hours on school jobs to their weekly hours on commercial jobs to determine, based on the total, plaintiffs' entitlement to overtime pay for those weeks.

Defendants argue that all of plaintiffs' claims are prevailing wage claims, which, under § 220, must be resolved by the Comptroller, subject to Article 78 review in state court. In the alternative, they contend (1) that "plaintiffs have failed to meet their threshold evidentiary burden of presenting evidence that Tomcat's detailed payroll records are inaccurate or inadequate," Def.'s Mem. of Law in Supp. at 13, and (2) that plaintiffs' claims are barred by the statute of limitations. Finally, Tomcat argues that the claims against it are barred by the doctrine of *res judicata* due to plaintiff's failure to "file[ ] a claim . . . in the bankruptcy court to preserve their rights" after Tomcat filed for bankruptcy. *Id.* at 22.

## II.

As *Grochowski* squarely holds, FLSA "does not address liability for underpayment of hours at prevailing wage rate." 318 F.3d at 87. Plaintiffs' reliance on *Samborski v. Linear Abatement Corp.*, 1998 WL 474069 (S.D.N.Y. Aug. 10, 1998), as support for the contrary is misplaced: Although the plaintiffs in that case sought to recover prevailing wages under FLSA, the district court's FLSA ruling was limited to the narrow issue, raised by the defendants in a motion to dismiss, of whether the plaintiffs were required to file consents to proceed as a collective action pursuant to 29 U.S.C. § 216(b), *see id.* at *1 (holding that because the "case was plainly commenced by and for the benefit of the named plaintiffs only" and plaintiffs did not seek certification as a collective action, "the consent requirements of the FLSA [were] inapplicable."); the defendants did not move to dismiss the plaintiff's prevailing wage claims under FLSA, and the court did not address

the issue *sua sponte*.

Plaintiffs here notified the New York State Department of Labor of their claims by letter dated December 21, 2004. They subsequently filed individual complaints with the New York City Comptroller on September 8, 2005. To date, neither office has issued a determination; therefore, plaintiffs prevailing wage claims are premature. Even if there were an administrative order in their favor, the Court would join those judges who have held that Article 78 proceedings are not within the district courts' supplemental jurisdiction or, alternatively, decline to exercise that jurisdiction.

Plaintiffs argue that the delay in the administrative proceeding "should not redound to [their] detriment" and that "they should be deemed to have satisfied the exhaustion requirement." Pl.'s Mem. of Law in Opp'n at 11. They have the right, however, to challenge unreasonable delay through an Article 78 proceeding, *see New York State Nat'l Org. for Women v. Pataki*, 261 F.3d 156, 168 (2d Cir. 2001) ("Once the delay in the processing of any claim . . . became unreasonable, each [claimant] could have brought an Article 78 proceeding to mandamus [agency] officials to proceed expeditiously to resolve the . . . claim."); again, such a proceeding must be brought in state court.

In short, prevailing wage claims arise only under § 220 and do not fall within the Court's supplemental jurisdiction. The Court must, therefore, determine which of plaintiffs' claims are properly categorized as prevailing wage claims.

## A. Pre-January 2002 Claims

For the pre-January 2002 work reflected in Tomcat's records, plaintiffs argue

only that they should have been paid at the higher hourly rates applicable to school jobs;
these claims are plainly prevailing wage claims. Similarly, to the extent plaintiffs'
argument that Tomcat failed to record all hours worked on school jobs applies to the first
40 hours of each work week, FLSA is not implicated; these claims are also prevailing wage
claims.

To the extent plaintiffs claim nonpayment of hours in excess of 40 per week,
by contrast, their claim implicates both entitlement to overtime compensation *and* the
hourly rate upon which such compensation should be calculated. The Court's research has
revealed no case confronting such "hybrid" claims combining elements of both overtime
and prevailing wage claims; however, the Second Circuit's opinion in *Grochowski* provides
some guidance. There, plaintiffs sought unpaid overtime for work on federal construction
projects and argued that overtime should be calculated based on prevailing wage rates
because the federal Davis-Bacon Act ("DBA"), 40 U.S.C. § 276a, required payment of
prevailing wages on federal projects. *See* 318 F.3d at 87. Noting that the DBA provided a
specific administrative procedure for recovery of prevailing wages, the circuit court
rebuffed the plaintiffs' attempt to import the requirements of the DBA into an FLSA
overtime claim: "[T]he district court properly limited the plaintiffs' claims under the FLSA
for unpaid overtime compensation to one-and-a-half times the hourly rates *actually paid*."
*Id.* (emphasis added).

Guided by *Grochowski*, the Court holds that even though the third category
of plaintiffs' pre-January 2002 claims deals with overtime payments, it must be deemed a

11

prevailing wage claim and, therefore, subject to the administrative process set forth in § 220. Defendants' only obligation under federal law was to pay plaintiffs overtime based on their "regular rate," 29 U.S.C. § 207(a)(1); until January 2002, that rate was substantially less than the prevailing rate defined by the Comptroller. Plaintiffs almost certainly do not want their overtime calculated based on the lower rate; indeed, plaintiffs' counsel stressed at oral argument that such a calculation would be unlawful under state law. But determining whether and to what extent defendants violated state law is, in this context, the exclusive province of the Comptroller, subject only to Article 78 review in state court.

In sum, all of plaintiffs' pre-January 2002 claims are prevailing wage claims; therefore, they are not cognizable under FLSA and fall outside this Court's supplemental jurisdiction.[4]

## B. Post-January 2002 Claims

Once Tomcat began paying prevailing wages for school jobs in January 2002,

---

[4]The administrative and judicial review provisions of § 220 do not apply to prevailing wage claims sounding in contract. *See Fata v. S.A. Healy Co.,* 289 N.Y. 401, 407 (1943) ("An intention that the statutory remedy should be used for violation of the contractual obligation [to pay prevailing wages] cannot be read into the statute by any reasonable construction."). Plaintiffs argue that they are third-party beneficiaries of such a contract. It is undisputed, however, that the only contract containing a prevailing wage clause was between IBM and New York City. Since defendants were not parties to that contract, they cannot be held liable on a breach-of-contract theory. *See California Pub. Employees' Ret. Sys. v. Shearman & Sterling,* 95 N.Y.2d 427, 434 -35 (2000) (holding that plaintiff asserting rights as third-party beneficiary must establish the existence of valid and binding contract between defendant and another party intended for plaintiff's immediate benefit). Plaintiffs might be able to assert such a theory against IBM, but since all claims against IBM were voluntarily dismissed, the Court need not address that issue.

there is no dispute that those wages became part of plaintiffs' actual wages. As a result, plaintiffs' claims for post-January 2002 work, unlike their claims for pre-January 2002 work, can be determined solely by reference to their regular – that is, actual – rate of pay, without delving into the issue of what rate defendants were legally obligated to pay for the first 40 hours of work each week on school jobs, which, again, is the exclusive province of the Comptroller . Thus, plaintiffs' claims for post-January 2002 work are pure overtime claims cognizable under the FLSA and, therefore, properly before the Court.

### III.

Since plaintiffs' claims for post-January 2002 work are not subject to the administrative and judicial review procedures of § 220, the Court must address defendants' alternative arguments that the claims should be dismissed for other reasons.

### A. Accuracy of Payroll Records

Defendants contend that its payroll records conclusively establish that plaintiffs were properly compensated for all hours worked. It is certainly true that an employee suing for unpaid overtime "has the burden of proving that he performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). Recognizing, however, that "it is the employer who has the duty under [FLSA] to keep proper record of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed," *id.*, the Supreme Court explained in *Mt. Clemens* that the employee's burden is not heavy:

> When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes . . . we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id.* at 687-88. Courts have applied this standard to analyze overtime claims under both FLSA and New York labor law. *See, e.g., Mascol v. E & L Transp., Inc.*, 387 F. Supp. 2d 87, 93-94 (E.D.N.Y. 2005) (applying *Mt. Clemens* to FLSA claim); *Hy-Tech Coatings v. New York State Dept. of Labor*, 640 N.Y.S.2d 581, 582 (2d Dep't 1996) (applying same to New York labor law claim).

With respect to post-January 2002 work, Tomcat's own payroll records reveal an issue of fact as to whether plaintiffs were paid overtime for all weeks in which their total number of hours exceeded forty: For example, in the week ending June 8, 2002, Brown and Cruz each worked thirty-five hours on one school job and twenty-two hours on another, totaling fifty-seven hours; in that same week, Solis worked thirty-five hours on one school job, twenty-two hours on another, and forty hours on a commercial job, totaling ninety-seven hours; yet the PayChex record for that pay period does not contain any notation that plaintiffs were paid any overtime compensation that week. *See* Decl. of Bradford D.

Conover ("Conover Decl."), Ex. P (Payroll Journal for Period End Date 06/08/02). It matters not whether plaintiffs worked on a single job or on multiple jobs in a given week; since they performed all jobs as employees of Tomcat, defendants were required to pay overtime based on the total number of hours each plaintiff worked per week. *See Walling v. Twyeffort, Inc.*, 158 F.2d 944, 947 (2d Cir. 1947) ("Only if an employee works more than 40 hours a week *for a particular employer* is the latter required to pay overtime." (emphasis added)).

Moreover, plaintiffs have presented adequate factual support for their contention that Tomcat's records do not accurately reflect the number of hours they worked: In addition to challenging the hours listed on the daily sign-out logs, *see, e.g.*, Cruz Dep. at 105 ("The names are on the left-hand side and we would sign on the right. Everything else in the middle would be blank"), plaintiffs also testified at deposition about specific periods in which they worked in excess of forty hours, *see, e.g.*, Brown Dep. at 171-72 (stating that he worked forty-five hours per week at P.S. 172 in January 2003 but was only paid for thirty hours); Solis Dep. at 70 (stating that he "work[ed] overtime [and] only [got] paid for a certain amount of work" in 2003); this testimony directly contradicts the hours reflected in Tomcat's payroll records. *See* Conover Decl., Ex. P (Payroll Journal).

Courts have held that "it is possible for [a] plaintiff to meet [the *Mt. Clemens*] burden by relying on his recollection alone." *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005). Accordingly, on their claims for post-January 2002 overtime, plaintiffs have satisfied their burden on summary judgment of "com[ing] forward with

specific facts showing that there is a genuine issue for trial," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted); since it is undisputed that Paterno and Jaramillo were corporate officers with operational control over Tomcat's payroll, plaintiffs may proceed against both the corporation and the individual defendants.

## 2. Statute of Limitations

Defendants argue that even if plaintiffs have demonstrated a genuine dispute of fact as to whether they received all overtime compensation to which they were entitled, their claims are time-barred. Since plaintiffs filed their complaint on October 14, 2003, however, their post-January 2002 overtime claims are well within the applicable statutes of limitations. *See* 29 U.S.C. § 255(a) (imposing a two-year statute of limitations, extended to three years for claims "arising out of a willful violation"); N.Y. Lab. Law § 663(3) (imposing six-year statute of limitations).[5]

## 3. Res Judicata

Tomcat argues that the claims against it are barred by the doctrine of *res judicata* because Tomcat obtained a final decree of bankruptcy under Chapter 7, "effectively rendering Tomcat insolvent, dissolved and defunct." Def.'s Mem. of Law in Supp. at 22.

---

[5]Because plaintiffs' post-January 2002 claims fall within FLSA's two-year statute of limitations, plaintiffs need not avail themselves of the three-year period for willful violations. Willfulness, however, remains relevant to the question of enhanced damages. *See supra* Part I.B.1. Since plaintiffs have raised a material issue of fact as to willfulness, *see, e.g.*, Solis Dep. at 240 ("Pete [Paterno] would blatantly say oh you were only worth that much this week, and certain things like that."), summary judgment regarding enhanced damages is inappropriate.

A review of the bankruptcy court record reveals that (1) Tomcat filed for Chapter 7 bankruptcy on December 31, 2004; (2) on March 25, 2005, the trustee in bankruptcy reported that "the estate ha[d] been fully administered" and that "[it] ha[d] no non-exempt property to distribute," *In re Tomcat Elec. Sec., Inc.*, No. 04-BR-28143 (Bankr. E.D.N.Y.) (Trustee's Report of No Distribution dated Mar. 25, 2005); and (3) the bankruptcy court issued a final decree closing the case on April 13, 2005. Unlike individuals, however, corporations do not receive a discharge of their debts at the end of a Chapter 7 bankruptcy, *see* 11 U.S.C. § 727(a)(1) ("The [bankruptcy] court shall grant the debtor a discharge, unless . . . the debtor is not an individual."); consequently, "[t]he fresh start policy . . . does not apply to corporate debtors." *In re Prudential Lines Inc.*, 928 F.2d 565, 573 (2d Cir. 1991) (citations omitted).

## IV.

Defendants argue that an award of excess costs, expenses and attorneys' fees pursuant to 28 U.S.C. § 1927 is warranted because plaintiffs failed to withdraw their complaint despite being put on notice "at the outset . . . as to [its] legal infirmities and apparent frivolous nature." Def.'s Mem. of Law at 25. The Second Circuit has held that "[b]ad faith is the touchstone of an award under [§ 1927]," *United States v. International Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir.1991), and that "[l]ike an award made pursuant to the court's inherent power, an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose," *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir.

1986).

Since plaintiffs have asserted meritorious overtime claims under FLSA and New York law, sanctions are not warranted. Indeed, since defendants' own payroll records raise a triable issue of fact as to plaintiffs' overtime claims, an argument could be made that defendants should be sanctioned for moving to dismiss those claims under Rule 56. As this case proceeds to trial, defendants' counsel would be well-advised to husband his energies toward the litigation of meritorious arguments.

### IV.

With respect to plaintiffs' claims for overtime for work performed beginning in January 2002, defendants' motion for summary judgment is denied. In all other respects, it is granted; accordingly, plaintiffs' claims involving work performed prior to January 2002 are dismissed without prejudice to plaintiffs' right to pursue such claims in the appropriate administrative forum and, if necessary, through an Article 78 proceeding in state court. Defendants' motion for excess costs, expenses and attorneys' fees under 28 U.S.C. § 1927 is denied.

**SO ORDERED.**

/signed/
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
August 27, 2007